All right, looks like Council are ready. Let's get going. This is 25-3160 Filts v. Boilermaker-Blacksmith National Pension Trust. Mr. Hunt. Good morning, Your Honors. May it please the Court. My name is Gary Hunt. I'm here on behalf of the Boilermakers Pension Plan and Trust and the named trustees. I think maybe the most important thing about this appeal is to note that the lower court's decision is based upon two fundamental and clear errors. First, the lower court failed to consider or take into account the regulations under the Anti-Cutback Act that specifically define early retirement benefits. The court didn't even discuss those. Second, the lower court parsed the language of Section 8.08 of the plan in reaching its decision. That also is clear error. With that, I'll tell you, Your Honor, that there are five takeaways. One, pension plans, qualified pension plans, cannot pay early retirement benefits to retirees who have not separated from service. If they do, they threaten disqualification. The cases make this clear. The code and the regulations make this clear. Two, the ruling, any other ruling, would undermine the very premises upon which pension That's why the separation from service has been enacted by both ERISA and the code, which must be read together. Three, the impact of disqualification is catastrophic. That's important because it affects what the trustees must look at and consider when they are acting on these things. Counsel, I'm sorry to stop you. I know you said five, but the first three to me all give rise to, I think, a question as it relates to all three points, which is, it's both obvious and understandable why the plan would not want to jeopardize its tax benefit status and be in compliance with ERISA. But what I'm struggling with is whether or not that can overcome the plain language of the plan itself. In other words, you started by invoking ERISA regulations, and then I've talked again about the plan setting forth that its desire is to remain in compliance. And again, for all the obvious reasons. But is there any authority that says, well, its desire and its objective to comply with regulations is enough to overcome the plain language itself? No, Your Honor. But the question is, was there plain language? And the answer is no. When the lower court... Are we talking about 8.08 now? Yes, that's in the plan. And 8.08, for somebody to be considered to be retired and therefore entitled to early retirement benefits, the participant, the applicant, must withdraw completely and refrain from engaging in certain types of activity. That's in the plan. That's in 8.08. When the court... Then you have 1 and 2 that seem to demonstrate that an employee can work for another covered employer under a couple of different circumstances. That's how the district court construed that. Well, actually, Your Honor, what the district court did is when it quoted that section, it actually didn't even include that language, withdraw completely at the end. In its decision, when quoting that section 8.08 and discussing what the plan required... So are you saying that the prepositional phrase from employment or self-employment for an employer which performs work in an industry traditionally covered by a CBA and 1 and 2 don't modify the verb phrase withdraw completely? No, Your Honor. It can't. They can't. Because if they do, they're going to... That would permit the payment of retirement benefits to a pensioner who has not separated from service, who has not severed. Is withdraw a transitive verb? I mean, it takes an object, right? Withdraw completely from what? I'm going to withdraw today from what? From the court? From a CBA? And that is, in some ways, the crux of this. Because Judge Federico referenced the plain language of the plan. What does withdraw completely end mean? The court said, well, I'll just not even refer to that in my quotation. What work does 1 and 2 do then? I'm sorry? What work does 1 and 2 do? Under your position, there should be a period after bargaining agreement and no additional language, sub 1, sub 2. What purpose do they serve? 8.08 applies to those who have retired. And 8.08 says that to be considered retired, you have to do certain things and avoid doing certain things. And among the things you must do is withdraw completely. And you must refrain from disqualifying employment. And 1 and 2 talk about disqualifying employment. When the plan... I guess I read them to say that you could do non-boilermaker work and that would not be disqualifying employment. I believe that if you're doing even non-boilermaker work for an employer that is contributing to the plan, then you are failing to conform to the obligations. That's the reason you enacted the separation rule, was to make that point, right? Yes, Your Honor. I will point out that 8.08 used to be called disqualifying employment. And the language was essentially the same. The title was amended at one point. And the types of disqualifying employment were actually narrowed somewhat. So it was more of a benefit to the retirees. But it was a disqualifying employment provision. And that's what it means. You must avoid the disqualifying employment, but you must be retired. And if you don't separate from service, you are not retired. That very concept has been embedded in the code and ERISA from the inception of ERISA. And that goes right to the next point. This concept of the plan deciding they had to implement the separation rule was necessary to respond to the many IRS promulgations that said if you don't do that, you're not a qualified plan. Before you – okay, you go ahead and finish your thought before I interrupt you. I was going to move into the anti-cutbacks. Well, before – okay, I don't want to hear about that, but I still want to ask you about your answer to Judge Timkovich. So I just want to make sure I understand your textual argument. So there are two things that someone has to do to qualify for early retirement benefits, as the title says, before normal retirement age, right? One is you have to withdraw completely, okay? But then it says and, and so that's conjunctive, right? And so you also have to refrain. And you would agree, would you not, that that prepositional phrase from employment, and it goes on to include one and two, all modify the second verb refrain, right? Yes. And so let's say you do withdraw completely. In order to be considered retired and entitled to a pension, you have to do both things. You have to withdraw completely. You say all good here. And then refrain from employment, da, da, da, da, in an industry traditionally covered by a CBA, where the employment or employment is in a job classification of the type included in a CBA. How do you satisfy that requirement for early retirement benefits? Well, that requirement is independent, first of all, of the withdraw completely requirement. But it's also a second requirement.  And you satisfy that by not going out and doing boilermaker work. For example, you don't go out and do welding for another employer that's not contributing to the plan. You don't set your own shop up and do these things, because the idea is you're then not retired as a boilermaker, and you must be retired as a boilermaker. And that's why the withdraw completely is so important. I'll also point out, that's why the exhaustion of remedies is so important, because each of these circumstances is different. But leaving that aside, these gentlemen, these individuals who supposedly have withdrawn completely, in many cases actually misrepresented whether they were withdrawing completely, these individuals must refrain from certain things. And everybody has agreed in this case that the disqualifying employment provisions is distinct from the withdraw completely. I'm not suggesting that my adversary says that withdraw completely has any particular meaning. I'm just saying everybody agrees that this disqualifying employment is intended to keep a boilermaker from going off and doing boilermaker work. Because they're now competing. How about non-boilermaker work? I'm sorry? Can he go do non-boilermaker work for a covered employer? They can do certain types of work that is non-boilermaker work, but if they would go and supervise. For a covered employer? I'm sorry? Can they go work for a covered employer and do non-boilermaker work? I don't have that language in front of me, but I believe that under some circumstances they could, for example, be a maintenance person. As long as they're not getting pension payments or contributions to the plan. I mean, they couldn't do that if, as a maintenance person, there were still going to be payments made to the plan. I'm not following that. Your Honor, pension payments are made based upon the hours of work. So if a boilermaker, an admitted typical boilermaker works 10 hours, there are contributions made to the plan for each of those 10 hours. I get that. My question was, Mr. Boilermaker takes early retirement from Boilermaker Company A, goes to work for Boilermaker Company B in non-boilermaker work. Is that permitted under the plan? Not if Company B is still contributing to the plan. For all employees or for my plaintiff, Boilermaker? For any employees. Okay. And the code has made that clear. Don't hide the ball. So a person cannot go work for a covered employer doing any work, maintenance or otherwise, as long as the company is paying into the pension. I apologize, Your Honor. I wish I had this language in front of me. But the rule is that if it's a contributing employer that they go to work for and contributions are being made for that employee, that is disqualifying. Even if he's a maintenance worker? Even if he's a maintenance worker. Okay. So when you're saying the language in front of you, are you talking about Section 8.08 or another section? 8.08. All right. Now, if I could go to the anti-cutback statute. Yeah, I do want you to cover the cutback statute and the statute of limitations. I know you're running short, but why don't you start with the cutback provision? I'll make this as short as I can. This concept of separation from service is embedded in the anti-cutback statute. The statute says protected benefits cannot be decreased or eliminated. And the statute says the definition of protected benefits will be established by Treasury regulation. This court in Kerber recognized that the regulations under the anti-cutback statute had been enacted and were binding on the courts. The regulation says that a protected benefit, to be a protected benefit, there must be severance from employment. That's what the language of the statute is. The decision of the court, quote, under the terms of a plan. The regulation includes severance from employment, but it also includes the restriction that it has to be severance from employment under the, quote, under the terms of the plan, right? Well, Your Honor. The regulation incorporates the requirement that it comply with the terms of the plan. Okay, Your Honor. Again, I don't have that memorized, but what I recall of this is that it says a protected benefit must include severance from employment. And the regulation then says the same thing. The regulation, wait a minute, I do have that in front of me. The regulation specifically says that an early retirement benefit is defined as, quote, the right under the terms of a plan to commence distribution of a retirement type benefit at a particular date after severance from employment. So you could have early retirement benefits under a plan, but it will still require severance from employment. So you're saying that is divorced from the restriction that it be under the terms of a plan? It can be that the terms of the plan becomes nullified? I mean, the reason for our question is, isn't it all one and the same as your first argument? It's all interpreting 8.08. If severance from employment under the regulation is modified under the terms of a plan, we're brought back to 8.08, right? I don't believe so, Your Honor. Okay. Because a retirement plan can create an early retirement benefit. And so an early retirement benefit can be provided under the terms of a plan to commence distribution at a particular date after severance from employment. But, again, the terms of the plan must require severance from employment. I understand. And that's the definition of a protected benefit. And if the benefit is not a protected benefit by this definition, the anti-cutback statute doesn't apply. That can be eliminated or diminished without violating the anti-cutback statute. And, again, this is embedded throughout ERISA and the Internal Revenue Code. And the lower court quoted the statute and then stopped short of saying anything about the regulation's definition of an early retirement benefit, which requires a payment only after severance from employment. So both in reading 808, the court omitted a directly relevant phrase, and in looking at the anti-cutback statute, the court didn't reference the regulations at all which define what a protected benefit is, and the anti-cutback statute only applies to protected benefits. Could you respond just quickly to your rebuttal to the plaintiffs on why the statute of limitations for breach of fiduciary duty shouldn't apply here? Or should apply here, I guess, for their position. Well, the statute of limitations, there were two statute of limitations considered by the lower court. One was the statute of limitations as to the actual claim for the benefits, and the other was the statute of limitations with respect to breaches of fiduciary duty by the trustees. Sorry. To which are you referring, Your Honor? To the second. Okay. Well, I can only tell you that the position of the plaintiffs has, first of all, been largely mooted because the court didn't grant any equitable relief, and that's the only thing that you can get under the provision that would give rise to an issue with that breach of fiduciary duty statute of limitations. No equitable relief as to the trustees. I'm sorry, Your Honor. And with respect to such a claim, it's the action of the trustees that triggers the breach of fiduciary duty. And in this case, that action was known back in 2010, and the court determined that the whole basis for the court's determination that there was a breach of fiduciary duty was the court's interpretation of the plan not including language that enabled a separation from service rule, notwithstanding the completely withdrawal language and all the other language in the code. That was the entire basis for the court's determination there was a breach of fiduciary duty. That was known back in 2010. As to the other statute of limitations, that arises out of the claim that the denial notice has failed to include a two-year statute of limitations notice in either, well, in the initial denials, that was included in the later denials. So there, in a sense, there are two different concepts, and the breach of the trustees really arises out of the concept that the court, lower court, interpreted the plan as to not permit a separation from service rule. It's complicated. I hope I answered your question, Your Honor. No, that was helpful. Thank you. Let's hear from the plaintiffs. Thank you. If it please the court, my name is Susan Martin, and I'm here as counsel for the named plaintiffs and the class participants. Could you get the mic a little closer, please? The microphone a little closer? Try that? Okay. Let me try and short-circuit the question about withdrawal from employment. And I think it's sort of a good lesson on why raising arguments on reply briefs are not generally considered by the courts. The defendants in this first case supported their separation from service rule based on what they claimed was a definition of retirement. That's following their amendment in 2010 to eliminate the title of Section 8.08, which was entitled retirement, and set forth explicitly to be considered retired before normal retirement age. You have to withdraw completely and refrain from working in a job classification covered by a collective bargaining agreement. That's essentially what it was. They abandoned their argument that it was the word retirement, and they tried to argue on summary judgment that Section 8.08 really didn't apply at all to the definition of retirement. It only applied after retirement. On their reply brief, they had a third post hoc rationalization or interpretation, if you will, and argued that, well, the court needs to interpret what the words withdraw completely and refrain from disqualifying employment. That that is a unified whole and only addresses disqualified employment is perhaps best illustrated by their summary plan descriptions that were issued in 2010 and subsequently. They're not highlighted in my brief, but as reply arguments, generally we can point the court to Joint Appendix Volume 5 at page 114, which are the documents from the summary plan descriptions, Doc 23-5. And there are two sentences in that summary plan description, which I would like to read to the court, because they have one sentence that sets forth their separation from service rule. And then they have another sentence that sets forth the disqualifying employment rule. And they kept the disqualifying employment rule in the summary plan description and added a rule about separation from service. So it's clear, if it wasn't clear already, that the words withdraw and refrain from only refer to disqualifying employment and have nothing to do with separation from service. Now, under this plan, the participants separate from service, as defendants call it, by retiring or leaving covered employment. And covered employment is employment within the collective bargaining unit for which contributions are made to the fund by contributing employers. That's all that has been required. Is that because of the words job classifications? I mean, does it, under certain job classifications, those are the only ones that have contributions made? That's correct. That is covered employment. Employers are defined as those person, companies, or entities that have collective bargaining agreements and contribute. And the disqualification rule, for decades, with one exception for 10 years, but for decades has been that employees leave their covered employment under the collective bargaining agreement for which contributions are made and they can work in any other job for a contributing employer, be it a vice president or a safety manager or any number of the jobs that the named plaintiffs and the class representatives were working in or wanted to work in. Now, the fact that they have come up with an internal revenue service regulation, I would say, and I'll address that quickly because you were asking my opposing counsel about that. First of all, the opposing counsel quoted the Retirement Equity Act and the provision for Section 204G clarifying that early retirement benefits are covered. There's nothing that says protected in that statute. It says early retirement benefits are to be treated as accrued benefits, clarifying that before the Equity Act, certain circuit courts said, yes, early retirement benefits are protected, and other courts had said no. So the Retirement Equity Act came in and clarified that and said for purposes of whether an amendment reduces benefits, early retirement benefits are to be treated as accrued benefits. Now, let me just mention that early retirement benefits is not an ambiguous term. We argued in our briefs that it's a term used in common parlance. It did not need definition by the Internal Revenue Service, you know, decades after the statute was passed. The original statute in 1974 defining normal retirement benefits uses early retirement benefits as a way to define it. In Section 1002, Paren 22 of ERISA, the definition of normal retirement benefits says it's the greater of the early retirement benefit under the plan or the benefit payable at normal retirement age. So Congress didn't feel a need to define early retirement benefits when it enacted the statute. The trustees do say that under Section 11.07 of the plan and under the IRS statute and regulations, they have a duty to comply with applicable law. And if they breach that duty, they jeopardize the existence of this particular plan. So as fiduciaries, they construed the language in these provisions to require this separation requirement. And if they didn't, then they've jeopardized the health of the plan itself. I understand that's their argument, Your Honor. Let me respond a couple of ways. First of all, the IRS regulation, speaking of separation from service or severance from service, is best understood as what this plan does and probably every other multi-employer plan did, is prescribe employment in covered employment. Now this plan at one point did say you couldn't work for a contributing employer, which is the rule they're claiming they've interpreted to now apply. But they deleted that rule and restored the prior rule that just said you can't work for a contributing employer in a job classification covered by a collective bargaining agreement. Now the best way for the court to interpret that is the way the IRS has, in fact, as a practical matter, made a de facto interpretation by issuing multiple qualification determination letters using the language of the plan as written and stating that they find the provision that has nothing to do with separation from service qualifies under the plan. Let me ask you this question. Is that argument circular? Because as Judge Shimlovich is pointing out, Paragraph 11.07 is an interpretive clause that we're interpreting the plan to take cognizance of the fact that it's intended to comply with the pension plan's tax qualification under ERISA. And so then you will argue that, well, 8.08 is unambiguous. And that was really the first interchange that Judge Federico had with your opposing counsel. But if the IRS gave this favorable determination letter based on a combination of interpreting 8.08 and its implicit recognition of its tax qualification requirements as the pension plan, as the trustees interpret it, then the favorable determination letter really wouldn't favor you. It would favor them. Well, I think that, first of all, 11.07 can't be, you know, complied with in 50%. It says shall comply with ERISA and the Internal Revenue Code. And defendants have sort of thrown out the ERISA portion of it in this case. And this Court has stated in the Stamper case and the other cases cited in our brief that there is no provision in ERISA that says you import provisions of the tax code into your plan for purposes of disqualification. So when we think the plan and we think the Court will conclude that this provision is unambiguous, there's a provision that says, you know, 8.08 defines retirement and retirement means don't work for a contributing employer under collective bargaining agreement classification for which employers are required to contribute. We think that it will find that the plan is unambiguous. But even if it didn't, you can easily interpret that provision in the code if the Court were to determine that it did apply. Interpret that provision as equal to or, you know, concomitant with the definition at 8.08, which the lower court correctly found was unambiguous and only limited post-retirement employment in those job classifications. And so I think it's very, very clear. And I think this case really is a straightforward application of the Supreme Court's decision in Hines in which they've made it very clear that changing the conditions for post-retirement employment is a violation of the statute. Of the cutback provision? Is that what you're talking about, the cutback provision? I'm talking, excuse me? Your argument that it's a violation under the cutback provision. Of the anti-cutback provision, yes. I want to make sure that I understand what you said earlier. Did the 2010 SPD change the terms of the plan? Now, I know you argued that, well, there was a superficial change in the title. They disavowed reliance on the change in the title. But my understanding is that those notices and the substance of the 2010 summary plan description didn't change the plan. That's correct. And so how can there be, in the cutback provision, talks about an amendment, you know, a change in the plan through an amendment that reduces the benefits. And I know that there's cases saying that a different interpretation, you know, couldn't constitute an amendment. I'm not sure I understand how that works. Well, changing the title here was the gateway for applying the separation from service rule. In fact, in this case, defendants argued that the other provision in the plan, Section 4.04, which says in order to retire you do the following things, and then it says, and you retire as that term is defined in Section 8.08. Well, after taking that title away, the defendants are now arguing that that 404 provision is a nullity, it's a relic, or in the reply brief they argue it's a Scribner's error. So they were using the change in title to amend the provision in 8.08. But you're saying that it didn't do that, and it's your claim. That's my question. Okay. The Supreme Court has basically said the summary plan description is not the plan, and you can't, and then actually the summary plan description says if there's a conflict between the summary plan description and the plan, the plan controls. So how does that not, how is that not fatal to your cutback provision argument? Your cutback provision is they diminish the benefits that are available to early retirees under the plan by virtue of what they did in 2010, and you're saying they did not do that. No, I'm saying they didn't change, they did not properly amend the plan to insert a separation from service rule, but they acted as if they had. I see. And by amending, by deleting the title retirement, which was in fact an amendment, and then acting as if there was a separation from service rule in the plan, that was an amendment easily covered by section 204 and Hines, because the statute as interpreted by the cases says directly or indirectly reducing benefits or taking benefits away. This was the indirect way that they did it because they wanted to apply it retroactively. Can I ask one more question?  I just have, I think it's a short question. You can turn off the clock. Excuse me? My question is, if we agree with you in your interpretation of 8.08, is the cutback provision argument moot? I thought about that question, Your Honor, and I don't think the cutback argument is necessarily moot to the degree that the defendants have made a very dangerous argument here that somehow early retirement benefits are controlled by a different definition than the one that had always been applied. But I do, you know, the court below agreed with us, so I think the court can affirm on our definition. Yes. Thank you. Counsel, can I ask about the cross appeal, specifically the statute of limitations issue relating to the fiduciary duty claim count two. Can you help me understand how that count two and the relief that was sought, how that fits into the puzzle here? In other words, what difference would it make if we were to agree with you that there was error to the district court? What practical difference would it make? It would make a significant difference to us, Your Honor, because the breach of fiduciary duty here wasn't just making a mistake on the benefits saying, you know, that there was a separation rule. It was just the lengths to which the defendants misrepresented the terms of the plan. By issuing summary plan descriptions that were not, the summary plan description says it's a summary of its plan terms, and so they withheld information and concealed information from the participants. And to the degree that there were any participants who were deemed not to have satisfied the other statute of limitations, which we think the court will affirm, but it's a protective one, Your Honor. And there's no question there was no actual knowledge, in our view, under Selima. There was no showing in this case whatsoever that any participant had actual knowledge that there was no provision in the plan. So if we agree with you and we say, district court, you got this wrong, and we remand back, the district court then is going to do what? So it'll look at count two, fiduciary duty again. Will it change potentially the number of plaintiffs who get part of in the pool for relief? Well, I think the court could reverse and not remand because there's no argument in this record that any participant had actual knowledge of the breach before. And we used bringing the litigation as sort of a euphemism of the, you know, accrual of the claim. The defendants, you know, yelled at us sort of in their brief about saying when the litigation was brought. But that was the first time this statute accrued because it was really when participants were told, had the ability to know, that there was no separation from service rule in the plan. So I think it could be reversed and without a remand just on the basis of no actual knowledge. But then again, I'm sorry, that's why I'm struggling. So if we just say the district court was wrong and we reverse, but not remand it back for the district court to do anything, I guess that goes back to my first question, which is what practical difference does it make? That's what I'm struggling with. Assuming the court affirms on the other basis it will not make a practical difference because all of the relief is available under every one of the counts. And let me just, in the reply brief, they raise our entitlement to relief under the other counts. And if I could just address that very quickly, that the judgment and the monetary relief here is unified for all of the counts. And the defendants, again, it was a question of presentment. In a footnote, the defendants on their trial, let me start off by saying, plaintiffs asked for the monetary relief under every count in the complaint because we think it's appropriate equitable relief under Cigna and the other cases cited in the brief. In their trial brief, the defendants stated in a footnote at page 8, note 5, that they disagreed with that. They challenged equitable relief, but they never presented it. They never argued it. We had a three-day trial. They didn't raise it. They didn't file any post-judgment brief challenging the right to equitable relief. And there was no distinction between the make whole relief given by the court, approved in a stipulated judgment. I mean, we submitted a joint judgment for the court to sign. And the defendants never brought up that, well, this relief is only available under count 1. All right, counsel, appreciate your argument. Thank you very much. Could you give Mr. Hunt two minutes for rebuttal? Thank you, Your Honor. I'll keep this short. I'll go in reverse order. This notion that none of the plaintiffs in this class knew about that there wasn't separation from employment, well, that's a factual determination. The record doesn't support it. The record essentially doesn't deal with that issue, and it would be inappropriate on summary judgment to make that determination based upon that record. With respect to the change in the title as the gateway or the intent, there is nothing in the record to support the notion that that change in title had anything to do with an intent to change the definition of retirement or with separation from service. Absolutely nothing. In fact, the record is to the contrary of that. So that representation is simply wrong. The determination letters, and my opposing counsel did point out, they're based on the language of the plan. So what is the plan going to look at? 1107, comply with the IRS. 808, withdraw completely. All right. Well, I can't hear you, so I think we're going to go ahead and have the case submitted and counsel excused. Oh, there we go. False alarm. Go ahead and make your final points. You've got a minute. The IRS determination letters specifically say they're based on the language of the plan. 1107 says it has to conform. It's intended to conform to the Internal Revenue Code. And we didn't write out ERISA. ERISA and the code are like this. They have to be interpreted together. And the letters also say it also depends, or the plan's qualification status depends on its operation in practice. And the determination letters don't deal with that at all. They don't look at that at all. And finally, I'll just make one more point. I think that opposing counsel is suggesting that the court should use some common definition of early retirement benefits instead of what the regulation defines an early retirement benefit as. That flies in the face of the Kerber decision, which is this court's own decision. And it flies in the face of the fact that regulations promulgated according to congressional authority are binding on the courts. They're law. Thank you very much. Thank you, counsel. We appreciate the arguments. Sorry about the interruption. At least we didn't have to evacuate the building. You're excused and the case is submitted. The court will be in recess until tomorrow morning at 8 p.m.